JAMES F. AND LYNN M. MOSS, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 26600–08.      Filed September 20, 2010.

Ps owned rental properties that generated losses for the
year in issue. R contends that Ps are subject to the passive
activity loss limitations of sec. 469, I.R.C. Ps offered a sum-
mary of the time P husband worked on the rental properties.
The summary showed that P husband worked on the prop-
erties for less than the 750 hours required by sec.
469(c)(7)(B)(ii), I.R.C. Ps, however, contend that, in addition to
the time P husband actually worked, he was "on call" for work
on the rental properties during the time that he was not at
his full-time job and that the "on call" hours should count
toward determining whether Ps meet the requirements of sec.
469(c)(7)(B), I.R.C. *Held*: P husband's "on call" time does not
count toward satisfying the 750-hour requirement of sec.
469(c)(7)(B)(ii), I.R.C., because P husband did not perform any
actual work on the rental properties during the "on call"
hours. *Held*, *further*, the losses from Ps' rental properties are
subject to the limited offset pursuant to sec. 469(i), I.R.C.
*Held*, *further*, Ps are subject to the accuracy-related penalty

for a substantial understatement of income tax pursuant to sec. 6662, I.R.C.

James F. and Lynn M. Moss, pro sese.
*Kathleen K. Raup*, for respondent.

WELLS, *Judge*: Respondent determined a deficiency of $8,070 in petitioners' Federal income tax for their 2007 tax year and an accuracy-related penalty pursuant to section 6662(a) of $1,614.[1] We must decide the following issues: (1) Whether the loss of $40,490 claimed on petitioners' Schedule E, Supplemental Income and Loss, should be disallowed because petitioners failed to meet the restrictions on passive activity losses under section 469; and (2) whether petitioners are subject to the accuracy-related penalty pursuant to section 6662(a) for the year in issue.

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The stipulations of fact are incorporated in this Opinion by reference and are found accordingly.

At the time the petition was filed, petitioners lived in Mullica Hill, New Jersey.

Petitioner James Moss (Mr. Moss) works at a nuclear power plant in Hope Creek, New Jersey (Hope Creek plant), operated by Public Service Electric & Gas Co. Mr. Moss is employed as a "nuclear technician—planning". Mr. Moss plans maintenance activities, develops "work packages" that include estimates of job time and equipment to be used, and helps to ensure compliance with Nuclear Regulatory Commission regulations.

During 2007, Mr. Moss was employed full time, 40 hours per week, generally working a shift of 7 a.m. to 3:30 p.m., Monday through Friday, for a total of approximately 1,900 hours. As part of Mr. Moss' duties at the Hope Creek plant, he also had to be available for "call out" time and "standby" time. Call out time occurs where an employee works unscheduled overtime.[2] Standby time occurs where an

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code, as amended, for the year in issue. Amounts are rounded to the nearest dollar.

[2] A regular workweek is 5 regularly scheduled basic workdays of 8 hours each. Overtime is all hours worked outside of the regular workweek.

employee is ordered to await a call for emergency work outside scheduled working hours. During standby time, an employee must be "fit for duty". Mr. Moss' 1,900 hours of work during 2007 included approximately 200 to 300 hours of call out time.

Petitioners own the following rental properties: (1) Four apartments at 301–303 2d Street, Swedesboro, New Jersey; (2) a single-family home at 1122 Elm Avenue, Wilmington, Delaware; (3) a single-family home at 1009 East 7th Street, Wilmington, Delaware; and (4) a single-family home at 611 East 22nd Street, Wilmington, Delaware (collectively, rental properties).

During his time away from work, Mr. Moss performed activities related to the rental properties. Mr. Moss' activities regarding the rental properties included maintenance, monitoring, eviction of nonpaying tenants, collecting rents, and preparation for new tenants. During 2007, Mr. Moss kept a calendar detailing the dates that he performed the foregoing activities (calendar); however, he failed to include on the calendar the time spent performing such activities. On October 23, 2009, Mr. Moss prepared a summary of the time he spent in connection with the rental properties (summary).

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for their 2007 tax year (2007 return).

Petitioners' 2007 return was prepared by a certified public accountant (C.P.A.). On Schedule E attached to their 2007 return, petitioners reported a total loss from the rental properties of $40,490. Respondent disallowed $31,318 of the loss, allowing a deductible loss of $9,172.

Petitioners timely filed a petition in this Court seeking a redetermination of their liability for the year in issue. [3]

## OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). [4]

---

[3] Petitioners also sought a redetermination for their 2006 tax year in their petition to this Court. Because the petition was not timely filed as to that year, we dismissed that portion of the instant case for lack of jurisdiction.

[4] Petitioners do not contend that sec. 7491(a) should apply in the instant case to shift the bur-
Continued

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to the claimed deductions. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

Taxpayers are allowed deductions for certain business and investment expenses pursuant to sections 162 and 212; however, section 469 generally disallows any passive activity loss for the tax year. A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the year over the aggregate income from all passive activities for such year. Sec. 469(d)(1). A rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates.[5] Sec. 469(c)(2).

There are two principal exceptions to the general rule that rental real estate activities are per se passive activities: (1) Section 469(c)(7); and (2) section 469(i). Pursuant to section 469(c)(7), the rental activities of a taxpayer who is a real estate professional are not per se passive activities but are treated as a trade or business subject to the material participation requirements of section 469(c)(1). Sec. 1.469–9(e)(1), Income Tax Regs.

A taxpayer qualifies as a real estate professional and is not engaged in a passive activity under section 469(c)(2) if:

(i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates [750-hour service performance requirement].

[Sec. 469(c)(7)(B).]

In the case of a joint return, the foregoing requirements for qualification as a real estate professional are satisfied if, and only if, either spouse separately satisfies the requirements. *Id.* Thus, if either spouse qualifies as a real estate profes-

den of proof to respondent, nor did they establish that it should apply to the instant case.

[5] A rental activity is "any activity where payments are principally for the use of tangible property." Sec. 469(j)(8).

sional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).

Section 1.469–5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), sets forth the requirements necessary to establish the taxpayer's hours of participation as follows:

The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

We have held that the regulations do not allow a postevent "ballpark guesstimate". *Bailey v. Commissioner*, T.C. Memo. 2001–296; *Goshorn v. Commissioner*, T.C. Memo. 1993–578.

Respondent does not contend that petitioners have failed to elect to treat all of the rental properties as one activity. See sec. 469(c)(7)(A) (flush language); see also sec. 1.469–9(g), Income Tax Regs. (an election in a prior year is binding for the tax year it is made and for all future years in which the taxpayer qualifies). Accordingly, we deem that issue conceded.

Petitioners contend Mr. Moss satisfies the section 469 requirements of being a real estate professional. Petitioners provided the calendar and the summary as evidence of Mr. Moss' time related to the rental properties during 2007. The calendar includes a description of the work that he performed on the rental properties and the dates on which that work was performed, but it does not include the amount of time that was spent in the performance of such work. According to the summary, petitioners estimate that during 2007 Mr. Moss spent 112.25 hours traveling to and from the rental properties and 342.75 hours working on the rental properties. Additionally, petitioners contracted with Twin Hills Management to assist Mr. Moss with repairs. Mr. Moss contends that he spent 25.5 hours traveling to and from the rental properties with the Twin Hills employees and 165

hours working alongside them. [6] Mr. Moss contends that he spent 137.75 hours traveling to and from his rental properties and 507.75 hours working on his rental properties, for a total of 645.5 hours.

The total of 645.5 hours is less than the 750-hour service performance requirement of section 469(c)(7)(B)(ii). However, to satisfy the remaining time requirement, petitioners contend that Mr. Moss was "on call" for the rental properties for all of the hours that he was not working at the Hope Creek plant in his regular job. Essentially, petitioners claim that Mr. Moss could have been called to perform work at the rental properties at any time that he was not working at the Hope Creek plant, and, therefore, such on call hours should count toward meeting the 750-hour service performance requirement. We do not agree with petitioners' contention that Mr. Moss' "on call" hours may be used to satisfy the 750-hour service performance requirement. Section 469(c)(7) applies where the taxpayer "*performs* more than 750 hours of services". Sec. 469(c)(7)(B)(ii) (emphasis added); see also sec. 1.469–9(b)(4), Income Tax Regs. ("*Personal services* means any work *performed* by an individual in connection with a trade or business" (emphasis added)). While Mr. Moss was "on call" for the rental properties, he could have been called in to perform services; however, these services were never actually performed by him. [7] Accordingly, we conclude that Mr. Moss' time "on call" for the rental properties does not satisfy any part of the 750-hour service performance requirement.

Additionally, petitioners claim that Mr. Moss' calendar and summary reflect only 75 percent to 85 percent of his time. However, petitioners failed to provide any further information regarding other personal services Mr. Moss may or may not have performed with respect to the rental properties. On the basis of the record, we conclude that petitioners have failed to show that Mr. Moss met the 750-hour service performance requirement of section 469(c)(7)(B)(ii) for the year in issue. Because petitioners have failed to show that

---

[6] The time related to Mr. Moss' work with Twin Hills is not the result of an estimate but rather was calculated from bills Twin Hills sent during 2007.

[7] Apparently, petitioners confuse the 750-hour service performance requirement of sec. 469(c)(7)(B)(ii) with the call out and standby time policies of Mr. Moss' employment at the Hope Creek plant.

Mr. Moss met the 750-hour service performance requirement, we hold that he is not a real estate professional for purposes of section 469(c)(7) and that petitioners' rental real estate activities must therefore be treated as a passive activity under section 469(c)(2). Consequently, it is not necessary to address whether Mr. Moss spent more than 50 percent of his time in the real estate trade or business or whether he materially participated in that business.

The second exception to the general rule that rental real estate activities are per se passive activities is provided in section 469(i)(1), which provides as follows:

> (1) IN GENERAL.—In the case of any natural person, subsection (a) shall not apply to that portion of the passive activity loss or the deduction equivalent * * * of the passive activity credit for any taxable year which is attributable to all rental real estate activities with respect to which such individual actively participated in such taxable year * * *.

The section 469(i) exception is limited to $25,000. Sec. 469(i)(2). The $25,000 maximum "offset", however, begins to phase out for taxpayers whose adjusted gross income (AGI) exceeds $100,000 and is completely phased out for taxpayers whose adjusted gross income is $150,000 or more. Sec. 469(i)(3)(A). For that purpose, adjusted gross income is derived without regard to "any passive activity loss or any loss allowable by reason of subsection (c)(7)" (modified AGI). Sec. 469(i)(3)(F)(iv). We have said that the active participation standard is met as long as the taxpayer participates in a significant and bona fide sense in making management decisions or arranging for others to provide services such as repairs. See *Madler v. Commissioner*, T.C. Memo. 1998–112.

During 2007, Mr. Moss actively participated in the rental properties by personally maintaining them as well as performing other managerial functions. As concluded above, Mr. Moss' rental real estate activities are section 469(c)(2) passive activities, and therefore the losses from the rental property claimed on Schedule E of $40,490 should be added back to petitioners' AGI of $91,166 to determine their modified AGI. See sec. 469(i)(3)(F)(iv). Adding back the Schedule E losses to petitioners' AGI yields a modified AGI of $131,656. Because petitioners' modified AGI exceeds $100,000 by $31,656, the $25,000 allowable loss amount must be reduced by 50 percent for each dollar of modified AGI that exceeds $100,000, or

$15,828, to an allowable loss of $9,172. See sec. 469(i)(3)(A). Consequently, on the basis of our holding above and the foregoing calculation, we sustain respondent's determination that petitioners have an allowable loss for their rental real estate activities of $9,172 [8] and a disallowed loss of $31,318. [9]

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax: (1) Due to negligence or disregard of rules or regulations or (2) attributable to a substantial understatement of income tax. "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" means any careless, reckless, or intentional disregard. Sec. 6662(c). "Understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). A "substantial understatement" of income tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A). The understatement is reduced to the extent that the taxpayer has: (1) Adequately disclosed his or her position and has a reasonable basis for such position, or (2) has substantial authority for the tax treatment of the item. Sec. 6662(d)(2)(B). With regard to the accuracy-related penalty, respondent bears the burden of production pursuant to section 7491(c), and petitioners bear the burden of proof. See *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001).

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all of the pertinent facts and circumstances. Sec. 1.6664–4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant. *Id.* Furthermore, an

---

[8] This is the amount respondent allowed in the notice of deficiency.

[9] This is the $40,490 reported as loss on Schedule E minus the $9,172 allowable loss. Any passive activity loss that is disallowed is treated as a deduction allocable to such activity in the next taxable year. Sec. 469(b).

honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. Sec. 1.6664–4(b)(1), Income Tax Regs.

On the basis of the record, we conclude that petitioners' understatement will be greater than $5,000. See sec. 6662(b)(2), (d)(1)(A)(ii). Therefore, we hold that respondent has met his burden of production regarding the accuracy-related penalty pursuant to section 6662(a).

As to petitioners' burden, they contend that they qualify for an exception to the accuracy-related penalty. Petitioners contend that the accuracy-related penalty should be waived because they were allegedly mistreated by the Internal Revenue Service (IRS).[10] However, the IRS' treatment of petitioners is not relevant to the reduction of the accuracy-related penalty pursuant to section 6662(d)(2)(B) or section 6664(c). Both exceptions relate to the taxpayer's actions, not the Commissioner's actions. See secs. 6662(d)(2)(B), 6664(c). Accordingly, we conclude that petitioners have failed to prove that they had a reasonable basis or substantial authority for deducting the losses claimed on Schedule E. See sec. 6662(d)(2)(B). Mr. Moss also testified that he relied on his C.P.A. to determine whether he was a real estate professional; however, he also testified that he did not provide his C.P.A. with the number of hours that he spent working on the rental properties. Therefore, we conclude that petitioners have also failed to show that they acted with reasonable cause and in good faith in deducting the losses claimed on Schedule E. See sec. 6664(c)(1). On the basis of the record, we hold that petitioners are liable for the accuracy-related penalty pursuant to section 6662(a) for the year in issue.

The Court has considered all other arguments made by the parties and, to the extent we have not addressed them herein, we consider them moot, irrelevant, or without merit.

---

[10] Petitioners allege that the IRS misaddressed documents, spelled petitioners' name wrong on documents, and would not "give you a straight answer".

On the basis of the foregoing,

*Decision will be entered for respondent.*