T.C. Memo. 2011-69

UNITED STATES TAX COURT

YUSUFU YERODIN ANYIKA AND CECELIA FRANCIS-ANYIKA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23437-08.                    Filed March 24, 2011.

Yusufu Yerodin Anyika and Cecelia Francis-Anyika, pro sese.

Lisa Blades, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, Judge:  Respondent determined deficiencies of $5,302 and $4,599 in petitioners' Federal income taxes for their 2005 and 2006 tax years, respectively.  Respondent also determined penalties pursuant to section 6662(a) of $1,055.40 and $827.80, respectively.  The issues we must decide are:  (1) Whether petitioners are real estate professionals as defined in section

469(c)(7)(B); (2) if petitioners are not real estate professionals, whether their rental real estate losses are phased out pursuant to section 469(i); (3) whether petitioners are liable for a section 6662(a) penalty for substantial understatement of income tax and/or negligence for 2005; (4) whether petitioners are liable for a section 6662(a) penalty for negligence for 2006; and (5) whether petitioners are liable for a penalty pursuant to section 6673(a)(1).[1]

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found accordingly. At the time they filed their petition, petitioners resided in Pennsylvania.

Petitioners, Yusufu Yerodin Anyika (Mr. Anyika) and Cecelia Francis-Anyika (Mrs. Francis-Anyika), are married and filed joint returns for tax years 2005 and 2006. Mr. Anyika is employed as an engineer, and he works 37.5 hours per week, 48 weeks per year. Mrs. Francis-Anyika is employed as a nurse, and she works 24 hours per week.

Mr. Anyika has been purchasing, renovating, managing, and selling rental properties since the 1990s. He views his rental

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

real estate activity as a second job and as an investment. During 2005 and 2006, Mr. Anyika owned two rental properties.

Petitioners used TurboTax software to prepare their 2005 and 2006 tax returns, and they did not consult a tax professional. Petitioners reported $133,117 and $167,630 in wages on their 2005 and 2006 tax returns, respectively. On their 2005 tax return, petitioners deducted $23,551 in rental real estate losses. On audit, respondent disallowed all but $5,428 of the claimed deductions. On their 2006 tax return, petitioners deducted $15,265 in rental real estate losses. On audit, respondent disallowed the entire amount of petitioners' claimed rental real estate deductions. As a result of the disallowances and a few other adjustments that petitioners do not dispute, respondent adjusted petitioners' tax liabilities from $14,451 to $19,753 for their 2005 tax year and from $20,552 to $25,151 for their 2006 tax year. In accordance with the adjustments, respondent determined deficiencies in petitioner's taxes of $5,302 and $4,599, respectively, and issued a notice of deficiency.

After receiving respondent's notice of deficiency, petitioners timely petitioned this Court. This case was originally scheduled for trial on November 16, 2009, but was rescheduled for March 2010. Unfortunately, in spite of the continuance and in spite of our order compelling petitioners to answer respondent's interrogatories and turn over documents they

planned to use as evidence at trial, petitioners failed to provide respondent with any of the requested items. Petitioners contend that they had reached an agreement with respondent's counsel that respondent's counsel would obtain the requested documents from the Internal Revenue Service employee responsible for auditing petitioners' returns. Respondent denies that such an agreement ever existed. Respondent has moved, pursuant to section 6673(a)(1), for sanctions against petitioners on the basis of their failure to cooperate with respondent's requests for documents.

## OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to the claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The burden of proof on a factual issue that affects a taxpayer's liability for tax may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." Sec. 7491(a)(1). Petitioners have neither claimed nor shown that they complied with the substantiation

requirements of section 7491(a). Therefore, the burden of proof remains on petitioners. See Rule 142(a).

Section 469 generally disallows any passive activity loss. A passive activity is the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the year over the aggregate income from all passive activities. Sec. 469(d)(1). A rental activity generally is treated as a per se passive activity regardless of whether the taxpayer materially participates.[2] Sec. 469(c)(2). In establishing whether a taxpayer's real property activities result in passive activity losses, each interest in rental real estate is treated as a separate rental real estate activity unless the qualifying taxpayer makes an election to treat all interests in rental real estate as a single real estate activity. Sec. 469(c)(7)(A).

An exception to the rule that a rental activity is per se passive is found in section 469(c)(7), which provides that the rental activities of a taxpayer who is a real estate professional are not per se passive activities but are treated as a trade or business subject to the material participation requirements of section 469(c)(1). Sec. 1.469-9(e)(1), Income Tax Regs.

---

[2]A rental activity is "any activity where payments are principally for the use of tangible property." Sec. 469(j)(8).

A taxpayer qualifies as a real estate professional and is therefore not engaged in a passive activity under section 469(c)(2) if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B). In the case of a joint return, the foregoing requirements for qualification as a real estate professional are satisfied if, and only if, either spouse separately satisfies the requirements. Id. Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not per se passive under section 469(c)(2).

Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), sets forth the requirements necessary to establish the taxpayer's hours of participation as follows:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Although "reasonable means" may be interpreted broadly, a postevent "ballpark guesstimate" will not suffice. <u>Moss v. Commissioner</u>, 135 T.C. 365, 369 (2010) (and cases cited therein).

Even if taxpayers fail to qualify as real estate professionals under section 469(c)(7) and must therefore treat losses from their rental properties as passive activity losses, they may still be eligible to deduct a portion of their losses pursuant to section 469(i)(1). Section 469(i) provides a limited exception to the general rule that passive activity losses are disallowed. A taxpayer who actively participates in a rental real estate activity may deduct a maximum loss of up to $25,000 per year related to the activity. The deduction is phased out as adjusted gross income, modified by section 469(i)(3)(E), exceeds $100,000, with a full phaseout occurring when modified adjusted gross income equals $150,000. Sec. 469(i)(3)(A).

Petitioners contend Mr. Anyika satisfies the section 469 requirements for being a real estate professional. To support their contention, they rely principally on Mr. Anyika's testimony that he worked the equivalent of 8 hours per day, 5 days per week, 48 weeks per year doing maintenance, repairs, and renovations to petitioners' rental properties. In their petition and at trial, petitioners contended that Mr. Anyika qualified as a real estate professional because he had spent at least 750 hours actively managing the rental properties. On Form 4564,

Information Document Request, submitted by petitioners during their audit, petitioners declared, under penalty of perjury, that Mr. Anyika devoted 800 hours per year to working on the rental properties during 2005 and 2006. During the trial, the Court explained that, in order to qualify as a real estate professional under section 469(c)(7)(B), a taxpayer must spend at least 750 hours materially participating in the real estate business and, additionally, must devote more than one-half of his total personal services working hours to his real estate business.

It was only after the Court had explained the law that Mr. Anyika understood, for the first time, that he would have to have spent at least 1,800 hours engaged in the real estate business in order to qualify as a real estate professional under section 469(c)(7)(B). After understanding that, to qualify, he had to spend more hours engaged in managing the rental properties than he did working as an engineer, Mr. Anyika began to contend that he had spent the equivalent of 8 hours per day, 5 days per week, 48 weeks per year (1,920 hours per year) working on the rental properties. After being confronted during trial by the evidence of his prior signed statement that he worked 800 hours per year on the rental properties, Mr. Anyika stated that he was "speaking from memory with the exact numbers", and that to be sure, he would need to look over the numbers more closely. In addition to Mr. Anyika's testimony, petitioners submitted real estate titles

and various bills and receipts to substantiate Mr. Anyika's work on the rental properties.

Unfortunately for petitioners, Mr. Anyika's testimony at trial that he devoted approximately 1,920 hours per year to working on the rental properties contradicts his prior statement during the audit that he worked only 800 hours per year on the rental properties. Mr. Anyika made the 800-hour estimate on a Form 4564, which he signed under penalty of perjury.

We do not find Mr. Anyika's testimony that he worked approximately 1,920 hours per year on the rental properties credible. Not only does it contradict his earlier signed statement, but it also changed during trial once Mr. Anyika realized that he would need to have devoted more hours to his real estate properties than to his job as an engineer (i.e., he would need to have spent more than 1,800 hours working on the rental properties), instead of the 750 hours he had originally believed would be sufficient for him to qualify as a real estate professional under section 469(c)(7).[3] We therefore conclude that Mr. Anyika was not a real estate professional under section 469(c)(7) for 2005 or 2006. Accordingly, we hold that

---

[3]Even if we did find Mr. Anyika's trial testimony credible, he admitted in his testimony that his numbers were simply an estimate and that he did not remember the exact hours; and such a rough, after-the-fact estimate of his hours would not qualify as a "reasonable means" of establishing the extent of his participation in the rental activity. See Moss v. Commissioner, 135 T.C. 365, 369 (2010).

petitioners' rental activities during 2005 and 2006 were passive activities pursuant to section 469(c)(2).

Even though we have held that petitioners' rental activities were passive, we still must consider whether petitioners are eligible to deduct a portion of their real estate losses pursuant to section 469(i)(1) because of Mr. Anyika's active participation in managing the rental properties. The active participation standard is met as long as the taxpayer participates in a significant and bona fide sense in making management decisions or arranging for others to provide services such as repairs. See Moss v. Commissioner, 135 T.C. at 371; Madler v. Commissioner, T.C. Memo. 1998-112. It is clear from the record that petitioners fully own the rental properties and that Mr. Anyika has personally been very active in managing the rental properties. Moreover, respondent concedes that Mr. Anyika actively participated in real estate activities during 2005 and 2006. Accordingly, we hold that petitioners are entitled to deduct a portion of their real estate losses pursuant to section 469(i)(1).

However, petitioners' income is subject to the phaseout under section 469(i)(3)(A). During both 2005 and 2006, petitioners' modified adjusted gross income was more than $100,000, requiring that the $25,000 maximum deduction be reduced

by 50 percent of the amount by which their income exceeded $100,000. Sec. 469(i)(3)(A).

We next consider the penalties determined pursuant to section 6662. Subsection (a) of section 6662 imposes an accuracy-related penalty of 20 percent of any underpayment that is attributable to causes specified in subsection (b). Subsection (b) applies the penalty to any underpayment attributable to, inter alia, a "substantial understatement" of income tax, sec. 6662(b)(2), or "negligence or disregard of rules or regulations", sec. 6662(b)(1).

There is a "substantial understatement" of income tax for any tax year where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the tax year or $5,000. Sec. 6662(d)(1)(A). However, the amount of the understatement may be reduced by any portion of the understatement attributable to any item for which there was substantial authority for the taxpayer's treatment, or with respect to which the relevant facts were adequately disclosed on the taxpayer's return and there was a reasonable basis for the taxpayer's treatment. Sec. 6662(d)(2)(B).

Section 6662(a) also imposes a penalty for negligence or disregard of rules or regulations. Under section 6662(c), "negligence" is "any failure to make a reasonable attempt to comply with the provisions of this title". We have defined

negligence as "a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances." Bunney v. Commissioner, 114 T.C. 259, 266 (2000). Failure to maintain adequate books and records or to substantiate items properly constitutes negligence. Sec. 1.6662-3(b)(1), Income Tax Regs. A taxpayer is considered to have disregarded rules or regulations even if such disregard is "careless", meaning that the taxpayer "does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation." Sec. 1.6662-3(b)(2), Income Tax Regs.

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, supra at 446. The Commissioner has the burden of production only; the ultimate burden of proving that the penalty is not applicable remains on the taxpayer. Id.

Respondent contends that the section 6662 penalty for 2005 is justified on the basis of substantial understatement of income tax and/or negligence. See sec. 6662(b). For their 2005 tax year, petitioners understated their tax liability by $5,302, an amount which is greater than both $5,000 and 10 percent of the

amount required to be shown on their return, $1,975. Petitioners do not argue that the amount of their understatement should be reduced because they had substantial authority for any item or because their position with respect to any item was adequately disclosed. Accordingly, we hold that petitioners are liable for the section 6662(a) and (b)(2) penalty for 2005 because they substantially understated their income tax.

Respondent contends that petitioners are liable for the section 6662 penalty for 2006 on the basis of negligence. See sec. 6662(b)(1). Petitioners did not consult a tax professional when preparing their return for either year. Rather, petitioners based their deductions on their belief that Mr. Anyika was a real estate professional. However, petitioners have not explained how they arrived at their conclusion that Mr. Anyika qualified as a real estate professional, and Mr. Anyika acknowledged during trial that he had misunderstood the relevant statute and the requirements for being a real estate professional. A reasonable person in Mr. Anyika's position, understanding that the tax law governing the deductions he claimed was complex, would have consulted a tax professional instead of merely assuming that he qualified on the basis of his own conclusions. Even if Mr. Anyika had been correct in his understanding of the law, he was negligent in ensuring that he complied with it. At trial, Mr. Anyika was unsure of the number of hours he had spent working on

the rental properties, and his testimony and prior statement regarding the number of those hours were inconsistent.  It is clear that Mr. Anyika did not carefully document the hours he worked on the rental properties and that petitioners therefore failed to keep records adequate to substantiate the deductibility of their real estate losses.  Such a failure is evidence of negligence.  See sec. 1.6662-3(b)(1), Income Tax Regs.  On the basis of the record, we conclude that respondent has met the burden of production in showing that petitioners were negligent in preparing their tax returns for 2005 and 2006.

Section 6664(c) provides a reasonable cause and good faith exception to penalties under section 6662.  Section 6662 penalties will not apply to any portion of an underpayment to the extent that the taxpayer had reasonable cause and acted in good faith for that portion.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant. See id.  Furthermore, an honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and

education of the taxpayer may indicate reasonable cause and good faith. See Remy v. Commissioner, T.C. Memo. 1997-72.

Petitioners contend that they used TurboTax software to prepare their returns for both years and that the software program is to blame for any miscalculations in their income. However, petitioners have not provided any evidence showing the information that they entered into the software program, a preliminary showing that would be required to decide whether the software program is in any way at fault for petitioners' underpayment. See Paradiso v. Commissioner, T.C. Memo. 2005-187. Such software is only as good as the information the taxpayer puts into it. See Bunney v. Commissioner, supra at 267. We have held that the misuse of tax preparation software, even if unintentional or accidental, is no defense to penalties under section 6662. See Lam v. Commissioner, T.C. Memo. 2010-82.

Respondent has produced evidence that petitioners were negligent in not maintaining records necessary to substantiate that Mr. Anyika qualified as a real estate professional and that they did not act as reasonable persons would have to ensure their compliance with the tax laws; and petitioners have not shown that their deficiencies were due to anything other than their own negligence or disregard of the rules and regulations. Petitioners are therefore liable for the section 6662 penalties. See Higbee v. Commissioner, 116 T.C. at 449. Their use of

TurboTax does not establish reasonable cause and good faith.  See
Lam v. Commissioner, supra.

Respondent has satisfied the burden of production with
respect to the section 6662(a) penalties.  Petitioners'
understatement of income tax on their 2005 return is substantial
under section 6662(d)(1)(A) because it exceeds $5,000 and is
greater than 10 percent of the amount required to be shown on
their return.  Petitioners' 2005 and 2006 returns were both filed
negligently.  The burden therefore is on petitioners to prove
they acted with reasonable cause and in good faith.  We conclude
that petitioners failed to carry their burden.  Accordingly, we
hold that petitioners are liable for the section 6662(a)
accuracy-related penalties for their 2005 and 2006 tax years.

Finally, we consider whether petitioners are liable for a
penalty pursuant to section 6673(a)(1).  Section 6673(a)(1)
provides that this Court may require the taxpayer to pay a
penalty not in excess of $25,000 whenever it appears to this
Court that:  (a) The proceedings were instituted or maintained by
the taxpayer primarily for delay; (b) the taxpayer's position is
frivolous or groundless; or (c) the taxpayer unreasonably failed
to pursue available administrative remedies.  Respondent has
moved that the Court impose a penalty, contending that
petitioners instituted or maintained this proceeding primarily

for delay and that petitioners' position is frivolous or groundless.

Although petitioners' behavior was negligent and evidenced a lack of respect for the relevant law and the Court's procedures, it does not appear from the record that petitioners' primary purpose in instituting or maintaining their case was delay. Petitioners were uncooperative and failed to reply to respondent's requests for documents or to this Court's order compelling the same, but we note that petitioners are pro se and to a certain extent appeared confused by the proceedings. No doubt their confusion was due in part to Mr. Anyika's failure to read some of the documents sent to him, but negligent disorganization does not amount to purposeful delay. Additionally, although petitioners were mistaken about the applicable law and although the evidence they offered did little to support their position, their shortcomings do not make their case frivolous or groundless. See DeMoss v. Commissioner, T.C. Memo. 1993-636. Accordingly, we decline to impose a penalty under section 6673.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and
decision will be entered.