T.C. Memo. 2013-22

UNITED STATES TAX COURT

ANITA H. LANGLEY AND ROBERT E. LANGLEY, JR., Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20325-10.                    Filed January 17, 2013.

Anita H. Langley and Robert E. Langley, Jr., pro se.

<u>Frederic J. Fernandez</u> and <u>Mark J. Miller</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Chief Judge</u>:  Respondent determined a $5,966 deficiency in

petitioners' 2008 Federal income tax and a $1,193 accuracy-related penalty

pursuant to section 6662(a).[1]  After concessions, the issues for decision are:  (1)

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue
(continued...)

[*2] whether petitioners are entitled to deductions they claimed on Schedule E, Supplemental Income and Loss (From rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.), related to their claimed rental property; (2) whether petitioners are entitled to a dependency exemption deduction and an education credit with respect to their eldest daughter; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a).[2]  When they petitioned the Court, petitioners resided in Illinois.

## FINDINGS OF FACT

In March 2008 petitioners purchased a single-family home in Waukegan, Illinois (Waukegan property).  Petitioners intended to remodel this property and sell it to help pay for their two daughters' college educations.  After purchasing the property petitioners received an appraisal of comparable properties in the area which indicated average market rents of $800 to $1,100 per month.

---

[1](...continued)
Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[2]Petitioners concede that they are not entitled to $7,271 in medical expense deductions claimed on Schedule A, Itemized Deductions.  Respondent concedes that petitioners are entitled to an education credit for their youngest daughter.

**[*3]**   After completing major renovation work petitioners attempted to sell the Waukegan property and hired a realtor to list it for sale.  Petitioners were unable to sell the property, however, because of a downturn in the housing market.  In October 2008 petitioners decided to let petitioner wife's (Mrs. Langley's) mother live in the property while they attempted to find renters or sell it.  They agreed that if the market improved and a buyer was found, Mrs. Langley's mother would move out immediately.  Mrs. Langley's mother lived at the property continuously from October 2008 until the date of trial.

Petitioners testified that during 2008 they made monthly mortgage payments of $928 on the Waukegan property and charged Mrs. Langley's mother $600 per month in rent.  Petitioners had no lease agreement with Mrs. Langley's mother. They did not advertise the Waukegan property as a rental unit in 2008 or obtain a rental license.

Petitioners used TurboTax software to prepare their 2008 joint Federal income tax return.  On a Schedule E attached to their return petitioners reported zero rents received with respect to the Waukegan property and claimed deductions for $30,549 of expenses.[3]  Pursuant to the passive activity loss limitations of

---

[3]These expenses included:  $1,200 for utilities, $3,416 for taxes, $18,500 for
(continued...)

**[*4]** section 469(i), petitioners limited their total rental real estate losses to $25,000. Petitioners also claimed dependency exemption deductions for their daughters and a $1,103 education credit on behalf of their eldest daughter, J.L.

J.L., who was born in 1989, married on November 29, 2008, and filed a joint Federal income tax return with her husband for 2008. On that return, J.L. claimed deductions for exemptions for both herself and her husband.

In the notice of deficiency, respondent disallowed deductions for all of petitioners' claimed rental expenses, the dependency exemption deduction for J.L., and the education credits and determined an accuracy-related penalty pursuant to section 6662(a).

## OPINION

I. Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that the determinations are in error.[4] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

---

[3](...continued)
repair expenses, $3,416 for mortgage interest, $902 for insurance, $250 for cleaning and maintenance expenses, $2,765 for auto and travel expenses, and $100 for advertising expenses.

[4]Petitioners have not claimed or shown that they meet the requirements under
(continued...)

**[*5]** (1933). Deductions are a matter of legislative grace, and a taxpayer must prove entitlement to claimed deductions. Rule 142(a)(1); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

II. <u>Schedule E Deductions</u>

Generally, a taxpayer may not deduct expenses (other than expenses, such as interest and taxes, that are allowable without regard to their connection to a trade or business or an income-producing activity) with respect to a dwelling unit that the taxpayer uses as a residence during the taxable year. <u>See</u> sec. 280A(a) and (b). A dwelling unit is used as a residence if the taxpayer uses it for "personal purposes" for more than the greater of 14 days or 10% of the number of days during the taxable year that the unit is rented at a fair rental value. Sec. 280A(d)(1)(A) and (B). If a family member, as defined in section 267(c)(4), uses the dwelling unit as a principal residence, a "personal purpose" is attributed to the taxpayer unless the property is leased for a fair rental value for use as the family member's principal residence. Sec. 280A(d)(2)(A), (3)(A). Section 267(c)(4) defines a family member to include, inter alia, a taxpayer's mother. Whether a property is leased for a fair rental value is determined on the facts and

---

[4](...continued)
sec. 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

**[\*6]** circumstances of each case, including consideration of, among other things, comparable rents in the area. <u>See</u> sec. 280A(d)(2)(C); <u>Osborne v. Commissioner</u>, T.C. Memo. 1987-553; <u>see also</u> <u>Barranti v. Commissioner</u>, T.C. Memo. 1998-427; <u>McDonald v. Commissioner</u>, T.C. Memo. 1991-242.

Petitioners testified that they charged Mrs. Langley's mother $600 per month in rent, $328 less than what they paid per month for the mortgage on the property. Respondent asserts that there is no documentation to verify that Mrs. Langley's mother actually paid petitioners any rent. But even if we were to assume, for the sake of argument, that Mrs. Langley's mother paid the rent that petitioners say they charged her, this rent was significantly lower than the average monthly market rent of $800 to $1,100 charged for comparable properties in the area. Petitioners testified that these comparable rents were for the beginning of the year, before the housing market collapsed, and that comparable rents at the time they attempted to rent the property were closer to $900 per month. But even if we were to accept this testimony as true, the rent they claim to have charged was still significantly lower than comparable rents in the area. Petitioners have failed to establish that the property was leased for a fair rental value during 2008.

Because petitioners did not lease the property to Mrs. Langley's mother for a fair rental, a personal purpose is attributed to petitioners with respect to her use

**[\*7]** of the property. Mrs. Langley's mother used the property as her principal residence from October until the end of the year. Being deemed to have used the property for more than 14 days in 2008 and to have rented it at a fair rental value for zero days, petitioners may not deduct on Schedule E expenses with respect to the property for 2008.[5] See sec. 280A.

Respondent's determination to disallow petitioners' claimed Schedule E deductions with respect to the Waukegan property is sustained.[6]

III. Dependency Exemption Deduction and Education Credits

A taxpayer may claim a dependency exemption deduction with respect to an individual who is either a "qualifying child" or a "qualifying relative". Secs. 151(c), 152(a). Section 152(b)(2) prohibits an individual from being treated as a

---

[5]Respondent concedes that petitioners' claimed deductions for property taxes and mortgage interest on the Waukegan property will be deductible as itemized deductions on Schedule A if they are disallowed as deductions on petitioners' Schedule E.

[6]Respondent also argues that petitioners' Schedule E rental expense deductions should be disallowed because the Waukegan property rental did not constitute an activity engaged in for profit and, alternatively, that petitioners should be required to capitalize the claimed repair expenses. Because we have determined that petitioners failed to establish that the Waukegan property was leased for a fair rental value during 2008, we need not and do not address these arguments.

**[\*8]** qualifying child or qualifying relative if the individual files a joint return with his or her spouse under section 6013.

Petitioners claimed a dependency exemption deduction for J.L. Because J.L. filed a joint return with her husband for tax year 2008, petitioners are not entitled to a dependency exemption deduction for her. <u>See</u> sec. 152(b)(2). Consequently, they are also not entitled to an education credit on her behalf under section 25A. <u>See</u> sec. 25A(f)(1)(A)(iii). Accordingly, we sustain respondent's determinations to disallow the dependency exemption deduction and the claimed education credit with respect to J.L.

IV. <u>Accuracy-Related Penalty</u>

Section 6662(a) and (b) imposes a 20% accuracy-related penalty on any portion of a tax underpayment that is attributable to, among other things, negligence or a substantial understatement of income tax. "Negligence" includes the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Under section 7491(c), the Commissioner bears the burden of production with respect to the section 6662(a) penalty. Generally, this means that the Commissioner must come forward with sufficient evidence indicating that it is

**[\*9]** appropriate to impose the relevant penalty. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). In the light of our holdings that petitioners claimed Schedule E deductions to which they were not entitled, having failed to report any income from the purported rental payments, and that petitioners claimed as a dependent their married daughter who had filed a joint return with her husband, respondent has met his burden of production on the section 6662(a) penalty.[7]

The accuracy-related penalty does not apply with respect to any portion of the underpayment if it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). The burden is on petitioners to establish reasonable cause. <u>See</u> Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. at 449; <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

Petitioners' only argument with respect to reasonable cause is that they relied on TurboTax to prepare their tax returns. Tax preparation software such as TurboTax is only as good as the information the taxpayer puts into it. <u>See</u> <u>Bunney v. Commissioner</u>, 114 T.C. 259, 267 (2000); <u>see also</u> <u>Anyika v. Commissioner</u>, T.C. Memo. 2011-69. The misuse of tax preparation software, even if unintentional or accidental, is no defense to accuracy-related penalties under

---

[7]On brief respondent concedes that because of his other concessions, petitioners do not have a substantial understatement of income tax.

**[\*10]** section 6662. See Morales v. Commissioner, T.C. Memo. 2012-341; Anyika v. Commissioner, T.C. Memo. 2011-69; Lam v. Commissioner, T.C. Memo. 2010-82.

At trial petitioners acknowledged that they did no independent research, apart from using TurboTax, to determine how to handle their tax matters. Although they have not shown exactly the manner in which they relied on TurboTax or its instructions, we find it unlikely that TurboTax was responsible for the items giving rise to petitioners' deficiency. The record does not show that petitioners made a reasonable effort to assess their proper tax liability or had reasonable cause for their underpayment. Accordingly, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty.

To reflect the foregoing,

Decision will be entered
under Rule 155.