# United States Tax Court

T.C. Summary Opinion 2024-20

JAMES MICHAEL WARREN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 25429-21S.                    Filed October 3, 2024.

————

James Michael Warren, pro se.

*Gretchen W. Altenburger*, *Inga C. Plucinski-Holbrook*, and *Jonathan D. Walker*, for respondent.

## SUMMARY OPINION

LANDY, *Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the Petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

In a Notice of Deficiency (Notice) dated April 13, 2021, the Internal Revenue Service disallowed losses from petitioner James Michael Warren's rental real estate activity and determined a deficiency and a section 6662(a) accuracy-related penalty for tax year 2017. The issues for decision are whether Mr. Warren (1) may deduct passive

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar and numbers to the nearest whole number.

losses as a real estate professional pursuant to section 469 and (2) is liable for a section 6662(a) accuracy-related penalty. We resolve these issues in the Commissioner's favor.

*Background*

Mr. Warren organized Warren Assisted Living, LLC, in 2015 to open an assisted living facility to provide professional caregiver services. To that end, Mr. Warren purchased a single-family home (group home) in 2016 near his residence in Gilbert, Arizona. Mr. Warren began repairing the group home shortly after purchase and later decided to completely revise the layout to add more bedrooms and bathrooms to the existing footprint. During 2017, the year in issue, Mr. Warren was employed by Lockheed Martin Corp. (Lockheed) where he worked 1,913 hours as an engineer. As the work continued at the group home, Mr. Warren attended caregiver and business management courses. He also rented habitable rooms at the group home and received $6,000 of rental income. Mr. Warren provided no testimony or other evidence that the tenants received caregiver services or assisted in the renovations while residing at the group home.

On a timely filed 2017 Form 1040, U.S. Individual Income Tax Return, Mr. Warren reported an adjusted gross income (AGI) of $199,974 consisting of wages of $86,305; pension and annuity income of $155,402; no rents received on his Schedule E, Supplemental Income and Loss; and a net loss for rental real estate expenses incurred of $41,733. The Commissioner determined that Mr. Warren was not entitled to the loss deduction claimed, failed to report the rental income received,[2] and was not eligible for the active participation exception provided in section 469(i). The Commissioner issued Mr. Warren the Notice proposing a deficiency of $15,392 and a section 6662(a) accuracy-related penalty of $3,078. The penalty received timely managerial approval. On July 19, 2021, Mr. Warren, while residing in Arizona, timely petitioned this Court disputing the Notice.

Mr. Warren did not keep contemporaneous logs of his time spent renovating the group home. In preparation for trial, Mr. Warren created—and presented—two time logs. The first log maintained that Mr. Warren worked 1,421 hours at the group home; it was created one

---

[2] At trial, Mr. Warren admitted to receiving $6,000 of rental income. He did not assert that any amount of this income was nontaxable or subject to offsets. We find that Mr. Warren received $6,000 of rental income, and we deem this issue conceded.

week before trial. The second log maintained that Mr. Warren worked 1,628 hours at the group home; it was created the night before trial. Mr. Warren testified that the second log contained corrected information derived from emails and other records he maintained. Some of the hours listed on Mr. Warren's logs are supported by reference to emails, work permits, and invoices, but most remained unsupported beyond Mr. Warren's testimony.

## *Discussion*

Section 469 generally disallows any passive activity losses for the taxable year. A passive activity is any trade or business in which the taxpayer does not materially participate. § 469(c)(1). Rental activity is treated as per se passive regardless of whether the taxpayer materially participates. § 469(c)(2). The term "rental activity" means any activity where payments are principally for the use of tangible property. § 469(j)(8).

There are exceptions to the general rule for rental activities for (1) certain taxpayers (real estate professionals) in real property trades or businesses under section 469(c)(7) or (2) passive activity losses up to $25,000 under section 469(i).[3] *Moss v. Commissioner*, 135 T.C. 365, 368 (2010). A taxpayer qualifies as a real estate professional in a given tax year and is not engaged in a passive activity under section 469(c)(2) if

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and
> (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

§ 469(c)(7)(B).

---

[3] The Treasury regulations provide six exceptions to the definition of "rental activity" that, if met, would recharacterize an activity in which the taxpayer materially participates from passive to nonpassive. *See* Temp. Treas. Reg. § 1.469-1T(e)(3)(ii). Rental of property incidental to providing extraordinary personal services (for example, a patient staying in a hospital's boarding facility to receive medical treatment) is one such exception. Temp. Treas. Reg. § 1.469-1T(e)(3)(ii)(C), (v). On the record before us, there is insufficient evidence to determine whether Mr. Warren meets this exception.

A trade or business includes a taxpayer's status as an employee. *Putoma Corp. v. Commissioner*, 66 T.C. 652, 673 (1976), *aff'd*, 601 F.2d 734 (5th Cir. 1979).

The Commissioner's determinations in a Notice of Deficiency are generally presumed correct, and the taxpayer bears the burden of proving that he is entitled to any deduction claimed. *See* Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). A taxpayer must maintain sufficient records to substantiate the deduction claimed. § 6001; Treas. Reg. § 1.6001-1(a). The taxpayer may substantiate that he met the section 469(c)(7) hour requirement by any reasonable means. Temp. Treas. Reg. § 1.469-5T(f)(4). While contemporaneous records are not required, we have routinely held that a postevent "ballpark guesstimate" is not sufficient. *Moss*, 135 T.C. at 369.

Mr. Warren does not qualify as a real estate professional under section 469(c)(7)(B) because he worked fewer hours at the group home than he did at Lockheed. Mr. Warren's employee status at Lockheed was personal service in a trade or business. Mr. Warren worked 1,913 hours at Lockheed, and his job duties did not involve real property activities. To meet the first requirement of the section 469(c)(7)(B) test, Mr. Warren needed to spend more than 1,900 hours working at the group home. Even if we accepted Mr. Warren's second log as accurate, the total time spent on the group home totaled only 1,628 hours. Thus, Mr. Warren does not satisfy the section 469(c)(7)(B) test to qualify as a real estate professional. *See* § 469(c)(7)(B)(i); *see also Moss*, 135 T.C. at 370–71 (concluding that the section 469(c)(7) test is conjunctive, and the analysis may end when a taxpayer fails to satisfy one of its requirements).

Section 469(i) allows a taxpayer who "actively participated" in rental real estate activities during any taxable year to deduct up to $25,000 of the passive activity losses attributable to those activities in that year. § 469(i)(1) and (2). This deduction begins to phase out when a taxpayer's AGI exceeds $100,000 and phases out entirely when AGI reaches $150,000. *See* § 469(i)(3). Mr. Warren is ineligible for the exception under section 469(i) because his AGI exceeded $150,000. We sustain the Commissioner's determination that Mr. Warren is not entitled to deduct any loss on Schedule E of his 2017 return.

Lastly, the Commissioner determined that Mr. Warren is liable for a section 6662(a) accuracy-related penalty. Section 6662 imposes a

20% penalty on any portion of an underpayment of tax required to be shown on a return attributable to any substantial understatement of income tax. § 6662(a), (b)(2). An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. § 6662(d)(1)(A). Mr. Warren's underpayment exceeds both amounts. The Commissioner obtained timely approval to impose the penalty, *see* § 6751(b)(1), and Mr. Warren did not present any evidence that his underpayment was due to reasonable cause, *see* § 6664(c)(1); Treas. Reg. § 1.6664-4(b)(1). Accordingly, we determine that Mr. Warren is liable for the section 6662(a) accuracy-related penalty.

We have considered all the arguments that the parties have made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*